UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MARINA LARGE,

       Plaintiff,

    v.

REGENTS OF THE UNIVERSITY OF
CALIFORNIA and EDUARDO
BLUMWALD,

       Defendants.

NO. 2:08-cv-02835-MCE-DAD

<u>MEMORANDUM AND ORDER</u>

----oo0oo----

This is a sexual harassment and assault action brought under Title IX and the California Fair Employment and Housing Act ("FEHA") by Plaintiff Marina Large ("Plaintiff") against Defendants The Regents of the University of California ("University") and Eduardo Blumwald (hereafter collectively referred to as "Defendants").

Presently before the Court is Defendants' Motion for Summary Judgment or Partial Summary Judgment ("MSJ") (ECF No. 58) with respect to Plaintiff's Title IX, FEHA, and common law tort claims against Defendants.

As set forth below, Defendants' Motion is GRANTED in part and DENIED in part.

**FACTUAL BACKGROUND**

The alleged sexual harassment occurred during Plaintiff's time as a graduate student at U.C. Davis, while working in Defendant Blumwald's lab.  Plaintiff alleges that Blumwald sexually harassed her by exposing her to a hostile work environment, and that the University failed to take reasonable and timely steps to end the abuse.

Plaintiff came to UC Davis to begin a PhD program in the Plant Sciences Department in 2002, and in the spring of 2003 began working as a graduate student under the supervision and direction of Professor Blumwald.[1] (Complaint ("Compl."), ECF No. 58-5 at 3.)  Within a few months, Blumwald allegedly began directing sexually offensive and inappropriate comments toward Plaintiff. (Id.)  Plaintiff claims she alerted the Manager of the Graduate Group Complex to Blumwald's behavior but to no avail. (Id.)  In late 2004 or early 2005, Blumwald allegedly slapped Plaintiff's face and stated, "this is how it's done in my lab dear." (Id. at 3-4.)  Plaintiff claims she once again reported this incident to the Manager of the Graduate Group Complex, who claimed she would file a report. (Id. at 4.) Plaintiff claims she never received any follow-up information. (Id.)

_____

[1] Unless otherwise noted, the Factual Background is taken from the factual allegations laid out in Plaintiff's Complaint.

Plaintiff alleges that over the next few years, Blumwald continued to verbally harass, intimidate and threaten her. (Id.) He allegedly commented on her weight and pinched the sides of her waist. (Id.) He would allegedly comment on her sex life, remarking, "if you got laid you would be much more happy and easygoing." (Id.) Plaintiff alleges that Blumwald often demeaned her professionally, calling her an "idiot," and "not fit to be a graduate student." (Id.) He allegedly asked her if he was wasting his time with her because she might choose to have children instead of pursuing a career in science. (Id.) Plaintiff claims that Blumwald threatened to ruin her academic future, saying he would "fuck" and "screw" her at her thesis committee meetings. (Id. at 5.)

Plaintiff claims that on October 18, 2007, she was standing outside with some friends when Blumwald approached and interrupted the conversation. (Id.) At one point, Blumwald allegedly reached across the circle and slapped Plaintiff across the face. (Id.) Plaintiff reported this incident to the Department of Fair Employment and Housing on October 9, 2008, and received a Right-To-Sue letter. (Id. at 2.)

///
///
///
///
///
///
///
///

**PROCEDURAL BACKGROUND**

Plaintiff filed her Complaint with the Yolo Superior Court on October 20, 2008.  Defendants removed the case to this Court. Plaintiff's claims are as follows: (1) sexual harassment in violation of FEHA against University and Blumwald; (2) failure to prevent sexual harassment in violation of FEHA against University; (3) sexual harassment in violation of Title IX against University and Blumwald; (4) failure to prevent sexual harassment in violation of Title IX against University; (5) assault and battery against Blumwald; (6) false imprisonment against Blumwald; (7) intentional infliction of emotional distress (IIED) against University and Blumwald; (8) negligence against University and Blumwald; and (9) intentional interference with prospective economic advantage against Blumwald.

Defendant University moves for summary judgment as to all claims.  Defendant Blumwald also moves for summary judgment on all claims with the following exceptions; (1) the fifth cause of action for assault and battery to the extent it is based on an alleged assault on October 18, 2007, (2) the sixth cause of action for false imprisonment, and (3) the seventh cause of action for intentional infliction of emotional distress against Blumwald.  (MSJ, ECF No. 58 at 1.)  Plaintiff does not contest Defendants' Motion as to the ninth cause of action, and therefore Defendants' Motion is GRANTED regarding the claim for intentional interference with prospective economic advantage.  (Pl.'s Opp. to MSJ ("Opp."), ECF No. 59 at 1.)

///

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Rule 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-587 (1986); First Nat'l Bank v. Cities Ser. Co., 391 U.S. 253, 288-289 (1968).

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.

5

Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."  Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 14 Wall. 442, 448, 20 L. Ed. 867 (1872)).  As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more that simply show that there is some metaphysical doubt as to the material facts ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.

///
///
///
///
///
///
///

**ANALYSIS**

**A.  Defendants' FEHA Challenges**

California's Fair Employment and Housing Act (FEHA), Government Code § 12940(j)(1), provides that it is an unlawful employment practice for "an employer ... or any other person, because ... sex [or] gender, ... to harass an employee.... Harassment of an employee ... shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action.... An entity shall take all reasonable steps to prevent harassment from occurring...." <u>Nazir v. United Airlines, Inc.</u>, 178 Cal. App. 4th 243, 263 (2009).  Further, it is unlawful for an employer to "fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."  Cal. Gov't Code § 12940(k).

In order to bring a FEHA claim, the Plaintiff must exhaust administrative remedies by timely filing a charge of discrimination with the Department of Fair Employment and Housing ("DFEH"), and obtaining a right-to-sue letter.  <u>Romano v. Rockwell Int'l, Inc.</u>, 14 Cal. 4th 479, 492 (1996).  Submissions to DFEH must be construed liberally in favor of the complainant and in light of what might be uncovered by a reasonable investigation.  <u>Nazir</u>, 178 Cal. App. 4th at 268.  A civil complaint under FEHA is within the court's jurisdiction if its allegations are "like or related to" those contained in the DFEH complaint.

7

1    Okoli v. Lockheed Technical Operations Co., 36 Cal. App. 4th

2    1607, 1615 (1995).

3        FEHA claims must be filed within one year of the alleged

4    discrimination.  Cal. Gov't Code § 12960.  However, an employer

5    may be held liable for unlawful actions occurring outside the

6    limitations period under the "continuing violation doctrine."

7    See Richards v. CH2M Hill, Inc., 26 Cal. 4th 798, 802 (2001)

8    (holding that an employer's series of unlawful actions in a case

9    of disability harassment should be viewed as a single, actionable

10   course of conduct under the continuing violation doctrine).  The

11   Richards court said that the continuing violations doctrine

12   should apply to a course of conduct if "(1) the actions are

13   sufficiently similar in kind; (2) they occur with sufficient

14   frequency; and (3) they have not acquired a degree of

15   'permanence' so that employees are on notice that further efforts

16   at informal conciliation with the employer to obtain

17   accommodation or end harassment would be futile."  Id.  The

18   Richards court went on to detail the approach adopted in the

19   Ninth Circuit, which dispenses with the permanence factor.  Id.

20   at 816 ("The test employed is essentially whether the separate

21   acts of discrimination are 'closely enough related' to form a

22   continuing violation.") (citing Counts v. Reno, 949 F. Supp.

23   1478, 1484-86 (D. Hawaii 1996)).  There will be no continuing

24   violation "when the alleged misconduct involves different types

25   of unlawful discrimination."  Id. (citing Green v. Los Angeles

26   Cty. Superintendent of Sch., 883 F.2d 1472, 1481 (9th Cir. 1989).

27   ///

28   ///

8

1    Defendants contend that Plaintiff's first cause of action
2  for sexual harassment under FEHA is barred because she allegedly
3  failed to timely exhaust her administrative remedies, and because
4  her factual allegations do not support a finding of sexual
5  harassment as a matter of law.  (MSJ at 1-2.)  Defendants
6  challenge Plaintiff's second cause of action for failure to
7  prevent sexual harassment under FEHA either because she cannot
8  establish that she was sexually harassed or because the
9  University in fact did take action to prevent harassment upon
10 becoming aware of the allegations.  (Id. at 2.)  Plaintiff
11 responds that she pursued the requisite administrative remedies
12 by properly filing a complaint with DFEH, stating that she was
13 harassed.  (Opp. at 11-12.)

14

15          **1.    Whether Blumwald's Conduct Amounted to Sexual**
16          **Harassment, and Whether the Continuing Violations**
           **Doctrine Applies to Defendants' Conduct Are**
17          **Disputed Questions of Material Fact.**

18    Defendants argue that Plaintiff failed to exhaust her
19 administrative remedies under FEHA because she only checked a box
20 for harassment on the DFEH form, and the description she wrote
21 states only, "assaulted and battered in lab, and other."  (MSJ at
22 11.)  Defendants contend that Plaintiff's current allegations are
23 outside the scope of those indicated on the DFEH form, and thus
24 her present FEHA claim is barred.  (Id. at 12.)
25 ///
26 ///
27 ///
28 ///

1    Defendants contend that the continuing violations doctrine
2  does not save Plaintiff's claim because she failed to plead, and
3  is unable to prove, that Blumwald made any sexually harassing
4  comments, or engaged in sexually harassing conduct, during the
5  limitations period.  (Id. at 13.)  Defendants argue that the only
6  allegedly improper conduct that occurred in the one year before
7  Plaintiff filed her DFEH complaint are a slap and Blumwald's
8  threat to "fuck her" or "screw her" at Plaintiff's thesis
9  committee meetings.  (Id. at 11.)  Defendants contend that these
10 allegations do not constitute sexual harassment as a matter of
11 law.  (Id. at 11-12.)  They also argue that the comments made
12 over the duration of Plaintiff's employment were insufficient as
13 a matter of law to serve as the basis of a sexual harassment
14 claim.  (Id. at 15.)  Defendants point out that sexual harassment
15 involves "the disparate treatment of an employee on the basis of
16 sex - not the mere discussion of sex or use of vulgar language."
17 (Id.) (quoting Lyle v. Warner Brothers Television Productions,
18 38 Cal. 4th 264, 280 (2006).)

19    Defendants argue that even if Plaintiff were able to prove
20 an act of harassment occurred within the limitations period, the
21 continuing violations doctrine is inapplicable because the
22 alleged sexually harassing comments that occurred outside the
23 limitations period are not similar in kind to the alleged slap.
24 (Id. at 14.)  Further, Defendants claim that Large's actions
25 establish that she believed the harassment had acquired a degree
26 of permanence before the limitations period, thus barring
27 application of the continuing violations doctrine.  (Id. at
28 14-15.)

1    Plaintiff asserts that Defendant's "inappropriate, vulgar,
2    and sexually-charged behavior" created a hostile work environment
3    soon after she began working with him in 2002.  (Opp. at 1.)  She
4    describes a number of specific and general instances of both
5    physical and verbal abuse.  Some of the alleged verbal abuse is
6    distinctly sexual in nature.  For example, Plaintiff alleges that
7    Blumwald made explicit comments relating to her body, her sex
8    life, her reproductive plans, his own sex life, and her religion.
9    (Id. at 1-2.)  She also alleges physical abuse, including a slap
10   in 2004 or 2005, numerous closed-fist punches, and being grabbed
11   and shaken by the shoulders.  (Id. at 4.)  The incident that she
12   reported on the DFEH form allegedly occurred on October 18, 2007,
13   when Blumwald allegedly slapped her on the face.  (Id. at 5.)
14   Whether Blumwald's allegedly sexually charged comments or
15   his allegedly physically abusive behavior constituted
16   discrimination because of sex is a matter of factual dispute, and
17   not an issue amenable to summary judgment.  Further, the alleged
18   conduct over the course of Plaintiff's employment is closely
19   enough related to apply the continuing violations doctrine so
20   that it is not time barred.  Both physical and verbal abuse could
21   potentially constitute sexual discrimination, and both of these
22   types of abuse are alleged to have occurred both before and
23   during the limitations period.  Therefore, Defendants' Motion for
24   Summary Judgment will be DENIED as to Plaintiff's first cause of
25   action for sexual harassment in violation of FEHA against the
26   University and Blumwald.
27   ///
28   ///

11

**2.   Whether Defendant Failed to Prevent Harassment Is a Disputed Question of Material Fact.**

Defendants argue that Plaintiff's failure to prevent FEHA violations should be dismissed because she failed to establish sexual harassment.  The Court has already rejected the premise of this argument.  Defendants then argue that even if Plaintiff could prove sexual harassment, she must show that the University knew about the harassment and failed to take action to prevent it.  (MSJ at 17.)  As explained in more detail below, whether the University knew about the harassment and failed to take action to prevent it is a disputed question of material fact.  Therefore, Defendants' Motion for Summary Judgment will be DENIED as to Plaintiff's second cause of action for failure to prevent sexual harassment in violation of FEHA against the University.

**B.  Defendants' Title IX Challenges**

Title IX provides that "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  Congress passed Title IX in order to prevent the use of federal funds to support discriminatory practices in education.  Gebser v. Lago Vista Independent School Dist., 524 U.S. 274, 286 (1998) (citing Cannon v. University of Chicago, 441 U.S. 667, 704 (1979)).  Title IX is enforceable through an implied private right of action, and monetary damages are available.

12

See <u>Cannon</u>, 441 U.S. at 717; <u>Franklin v. Gwinnett County Public</u>
<u>Schools</u>, 503 U.S. 60, 76 (1992) (establishing that a school
district can be held liable in damages in cases involving a
teacher's sexual harassment of a student).

The Supreme Court has established when a recipient of
federal education funding may be held liable for the acts of an
employee.  In <u>Gebser</u>, the Supreme Court held that an institution
could not be held liable under Title IX "unless an official who
at a minimum has authority to address the alleged discrimination
and to institute corrective measures on the recipient's behalf
has actual knowledge of discrimination in the recipient's
programs and fails to adequately respond.  <u>Gebser</u>, 524 U.S. at
290.  Moreover, the response "must amount to deliberate
indifference to discrimination."  <u>Id.</u>

In <u>Gebser</u>, a teacher was arrested after a police officer
discovered him having sex with a minor high school student, and
the parents then brought suit against the school district under
Title IX.  <u>Id.</u> at 274.  The school principal had previously been
alerted by parents of the teacher's inappropriate comments in the
classroom.  <u>Id.</u> at 278.  The principal warned the teacher but did
not inform the district superintendent.  <u>Id.</u>  The school district
was found not to be liable because the principal had insufficient
information to alert him to the possibility that the teacher was
involved in a sexual relationship with a student, the
superintendent had not been informed, and the school therefore
had no opportunity to respond to the discriminatory conduct.  <u>Id.</u>
at 278-79.

///

1        **1.   Individuals Cannot Be Sued under Title Ix.**

2

3        Defendant Blumwald moves to dismiss the Title IX claims

4   asserted against him on grounds that individuals cannot be held

5   liable under Title IX.  Plaintiff disagrees.

6        Title IX's implementing regulations define a recipient of

7   federal funding under Title IX to include "any person, to whom

8   Federal financial assistance is extended directly or through

9   another recipient and which operates an education program or

10  activity which receives benefits from such assistance..."

11  34 C.F.R. § 106.2.  Plaintiff argues that Blumwald is a recipient

12  of federal funds, and thus can be held liable in his personal

13  capacity.  See Mennone v. Gordon, 889 F. Supp. 53 (D. Conn. 1995)

14  (finding that individuals receiving federal funds may be held

15  liable in their personal capacity under Title IX).

16       While Plaintiff is able to cite to only one district court

17  case outside the Ninth Circuit for the proposition that

18  individuals may be held liable under Title IX, overwhelming

19  authority suggests that only institutions that receive funding,

20  and not individuals working at these institutions, may be held

21  liable under Title IX.  The Supreme Court has noted that Title IX

22  has "consistently been interpreted as not authorizing suit

23  against school officials, teachers, and other individuals."

24  Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 247 (2009).

25  While the Ninth Circuit does not appear to have ruled on the

26  issue, courts within the Ninth Circuit have consistently ruled

27  that "individuals may not be held personally liable under Title

28  IX."

14

Doe v. Petaluma City Sch. Dist., 830 F. Supp. 1560, 1576 (N.D. Cal. 1993); see also Roe ex rel. Callahan v. Gustine Unified Sch. Dist., 678 F. Supp 2d 1008, 1024 (E.D. Cal. 2009) (granting summary judgment in favor of individual defendants sued in their personal capacity under Title IX for sexual discrimination and harassment).  Therefore, Defendants' Motion for Summary Judgment is GRANTED with respect to Plaintiff's third cause of action for violation of Title IX against Blumwald.

> **2.   There Is a Question of Material Fact Regarding the Position and Responsibilities of the University Official That Plaintiff Informed of the Alleged Harassment.**

Defendants also contend that the University cannot be held liable under Title IX because Plaintiff cannot establish that a school official with authority to remedy the situation had been informed of the alleged harassment. (MSJ at 7-9.)  Further, Defendants allege, Plaintiff fails to establish that the University was deliberately indifferent to the alleged discriminatory behavior. (Id. at 9-10.)  Plaintiff alleges that her reporting of the various alleged assaults and harassment by Blumwald presents a question of fact as the liability of the University. (Opp. at 9.)

Plaintiff contends she reported the alleged abuse to Dawne Shell, among others.  Plaintiff maintains that Ms. Shell was a "Director of Graduate Academic Programs," and that the UC Davis Sexual Harassment Policy and Procedure Manual gave "Supervisors, managers, directors," and others special duties with regard to sexual harassment. (Opp. at 10.)

1  Plaintiff contends that the Manual gave Ms. Shell the authority
2  to "take whatever action is necessary to prevent sexual
3  harassment and to correct it when it occurs." (Id.) Defendants
4  counter that Ms. Shell is not an "official of the recipient
5  entity with authority to take corrective action to end the
6  discrimination." (MSJ at 8.) (citing Gebser, 524 U.S. at 290).
7  Defendants contend that she was neither Blumwald's superior, nor
8  was she a management level employee with any power to remedy the
9  alleged discrimination.  (Id.)
10     There is clearly a question of material fact regarding
11 whether or not the officials to whom Plaintiff reported the
12 alleged harassment had the requisite authority to act in response
13 to her complaints.
14
15             **3.    There Is a Question of Material Fact Regarding**
16                 **Whether University Officials Acted with Deliberate**
                  **Indifference to the Alleged Discrimination.**
17
18     Defendants allege that Plaintiff cannot show that the
19 University acted with deliberate indifference to the alleged
20 discrimination because the University purportedly took prompt
21 action when they were informed of the alleged harassment. (MSJ
22 at 9-10.)  Plaintiff alleges that she told numerous officials
23 about the alleged harassment, and that the University took no
24 substantive action to remedy the situation. (Opp. at 19.)
25 Specifically, she alleges that she reported to Toshio Yamaguchi,
26 her lab supervisor, the day that Blumwald allegedly slapped her.
27 (Id. at 3.)
28 ///

Additionally, she claims that she spoke with Ms. Shell about
Blumwald's alleged yelling and inappropriate sexual remarks.
(Id.)  She says that neither Shell nor Yamaguchi advised her that
she should complain about Blumwald's conduct, or recommended that
she should report his misconduct to anyone else.  (Id.)
Defendants claim that they only learned of the sexual harassment
after Plaintiff had already left the lab, and that they had no
chance to remedy the situation.  (MSJ at 11.)  Defendants further
claim each employee who interacted with Large took some action,
which the University claims demonstrates that it did not act with
deliberate indifference.  (Id. at 17.)

As with the University's notice claims, there are similar
questions of material fact as to whether the University acted
with deliberate indifference to the alleged discrimination, and
therefore Defendants' Motion for Summary Judgment is DENIED in
regard to Plaintiff's third and fourth causes of action for
liability under Title IX against the University.

**C.  Defendants' Common Law Tort Challenges**

**1.   Plaintiff's Negligence and IIED Claims Against
University**

Defendants contend that Plaintiff's seventh and eighth
causes of action for negligence and IIED against the University
fail because public entities are not liable for common law torts.
(MSJ at 18) (citing Cal. Gov't Code § 815.)
///
///

1  Plaintiff counters that California law allows a public

2  institution to be held vicariously liable for injuries caused by

3  its employees.  (Opp. at 20.)

4        "A public entity is not liable for an injury, whether such

5  injury arises out of an act or omission of the public entity or a

6  public employee or any other person."  Cal. Gov't Code § 815(a).

7  "In California, a public entity and its employees are not liable

8  for an injury unless there is a statute declaring them to be

9  liable."  Grosz v. Lassen Cmty. Coll. Dist., 572 F. Supp. 2d

10 1199, 1212 (E.D. Cal. 2008).  However, "[a] public entity is

11 liable for injury proximately caused by an act or omission of an

12 employee of the public entity within the scope of his employment

13 if the act or omission would, apart from this section, have given

14 rise to a cause of action against that employee or his personal

15 representative."  Cal. Gov't Code § 815.2(a).

16       Plaintiff claims that Blumwald was acting in the course and

17 scope of his employment at the time of the alleged incidents of

18 harassment, and that both Blumwald and the University are

19 therefore liable under theories of direct and vicarious

20 liability.  (ECF No. 58-5, Exh. A at 6.)  Plaintiff's IIED claims

21 are based solely on Blumwald's behavior.  (Id. at 11.)  Her

22 negligence claims are based both on University's alleged failure

23 to properly screen and monitor Blumwald, and on Blumwald's own

24 behavior.  (Id. at 12.)  Based on § 815.2, the University, as a

25 public entity, may be liable to Plaintiff for IIED and negligence

26 based on injury proximately caused by Blumwald's alleged

27 harassment, which was allegedly within the scope of his

28 employment.

The alleged harassment also gives rise to a claim for IIED against Blumwald, so the claim against the University may be brought based on Blumwald's conduct.[2]

Therefore, Defendants' Motion for Summary Judgment with regard to Plaintiff's IIED and negligence claims against the University is DENIED.

### 2.    Plaintiff's Negligence Claim Against Blumwald

Defendants contend that Plaintiff's eighth cause of action for negligence against Blumwald cannot stand because the claim is based on the allegations of intentional harassment.  (MSJ at 19.) Defendants cite Scott v. Solano County Health and Social Services Dept., 459 F. Supp. 2d 959, 972 (E.D. Cal. 2006) for the proposition that in the employment context, allegations that individual defendants committed both negligence and intentional discriminatory acts cannot succeed.  Plaintiff fails to address this argument in her Opposition.

In Scott, the plaintiff claimed "negligent hiring, supervising, and/or training" against both the employer, and individual employees.  Scott, 459 F. Supp. 2d at 962.

///

---

[2] As to the claim that University may be liable for negligence based on its own failure to properly screen and monitor Blumwald, Plaintiff fails to allege a statutory basis for her claim, so the claim is barred under § 815(a).  See Ludavico v. Sacramento County, No. CIV. S-08-1473 FCD/JFM, 2009 WL 616868, at *5 (E.D. Cal. Mar. 11, 2009); see also Lindsay v. Fryson, No. 2:10-CV-02842LKKKJNPS, 2012 WL 2683019, at *3-4 (E.D. Cal. July 6, 2012) (dismissing negligent supervision, hiring, and retention claim against public entity under § 815(a)).

1  However, in this case, Plaintiff clearly is not alleging that
2  Blumwald negligently hired, supervised and trained himself.
3  Plaintiff's Complaint states: "Defendant BLUMWALD breached his
4  duty of care to Plaintiff because he continued to harass,
5  threaten and intimidate Plaintiff even though he knew, or should
6  have known, this behavior was inappropriate..." (ECF No. 58-5,
7  Exh. A, at 12.)  Plaintiff also alleges that "Defendants breached
8  their duty of care to Plaintiff by failing to properly screen
9  Blumwald," as well as failing to monitor him.  (Id. at 12.)
10 While it clearly makes no sense that Blumwald breached a duty to
11 screen and monitor himself, it is reasonable that Blumwald owed
12 Plaintiff a separate duty to provide a workplace free of
13 harassment and discrimination.  Plaintiff is free to claim
14 negligence against Blumwald in the alternative to her intentional
15 tort claims.  Therefore, Defendants' Motion for Summary Judgment
16 is DENIED in regard to Plaintiff's eighth cause of action for
17 negligence against Blumwald.
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

1

**CONCLUSION**

2

3       For all the foregoing reasons, Defendants' Motion for

4  Summary Judgment is GRANTED in part and DENIED in part.[3]

5  Judgment shall be entered in favor of Defendants on the following

6  claims: the third cause of action to the extent it alleges sexual

7  harassment in violation of Title IX against Blumwald, and the

8  ninth cause of action for intentional interference with

9  prospective economic advantage against Blumwald.  Summary

10 judgment is denied with respect to Plaintiff's remaining claims.

11      IT IS SO ORDERED.

12

   Dated: August 21, 2012

13

14                                   _____

15                                   MORRISON C. ENGLAND, JR.
                                     UNITED STATES DISTRICT JUDGE
16

17

18

19

20

21

22

23

24

25

26

27      [3] Because oral argument was not of material assistance, the
   Court ordered this matter submitted on the briefs.  E.D. Cal.
28 Local Rule 230(g).