UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MARINA LARGE,                          No. 2:08-cv-02835-MCE-DAD

      Plaintiff,

    v.                                 <u>MEMORANDUM AND ORDER</u>

REGENTS OF THE UNIVERSITY OF
CALIFORNIA and EDUARDO
BLUMWALD,

      Defendants.

----oo0oo----

    In the present action, Plaintiff Marina Large ("Plaintiff")
sues Defendants Regents of the University of California and
Eduardo Blumwald ("Defendants") for sexual harassment and
assault, as well as violations of federal statutes.  Plaintiff
now claims that as a result of the alleged abuse, she suffers
from posttraumatic stress disorder ("PTSD").

    The Pretrial Scheduling Order currently in place, last
modified on August 18, 2011, lists April 6, 2012 as the last day
to designate supplemental expert witnesses.  (Aug. 18, 2011
Order, ECF No. 21 at 1.)

Presently before the Court is Defendants' Motion to Modify Scheduling Order and Motion to Compel Mental Examination of Plaintiff.  For the reasons set forth below, the Motions are GRANTED.[1]

**BACKGROUND**

Plaintiff filed her lawsuit on October 20, 2008, alleging, <u>inter alia</u>, sexual harassment, assault, and intentional infliction of emotional distress ("IIED") while working as a graduate student in Defendant Blumwald's laboratory at UC Davis from 2003 to 2008.  (Opposition ("Opp."), ECF 53-2, Ex. 1, Pl.'s Compl. at 3-5.)  In a February 2010 deposition, when asked if she had been diagnosed with any mental condition, Defendant responded, "One of the therapists did talk to me about a condition.  Yes." (Burkett Decl., ECF No. 50-1, Ex. A, Pl.'s Dep. at 425: 13-14.)  She confirmed that the condition that she had spoken about was posttraumatic stress disorder ("PTSD"). (<u>Id.</u> at 425: 16.)  Plaintiff then stated that she had not been given any psychological tests, been prescribed any medications, nor received any additional treatment for medical, physical, or mental issues. (<u>Id.</u> at 425-26.)

///

///

///

---

[1] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).

1    In documents provided to Defendants in June 2010 by

2 Community Health Awareness Council ("CHAC"), located in the San

3 Francisco Bay Area, where Plaintiff received counseling in

4 December 2008, an Initial Treatment Plan states: "DSM IV

5 DIAGNOSIS: AXIS I: 309.81 PTSD." (Opp. Ex. 3, CHAC Report at

6 10.)  The Psychotherapy Notes from the same date say that they

7 "Discussed PTSD type reactions to abuse situation..." (Id. at

8 14.)  The records indicated that Plaintiff had seen a therapist

9 only four times in December of 2008 and January of 2009.  CHAC

10 subsequently "terminated" Plaintiff for failure to return to

11 therapy after she cancelled four appointments.  Plaintiff

12 accordingly had received no treatment directed to any PTSD issues

13 during the year prior to her February 2010 deposition.

14    Although Plaintiff's 2010 deposition testimony indicated she

15 was not being treated for PTSD, given the length of time that had

16 elapsed since that deposition, Defendants propounded follow-up

17 interrogatories in early 2012 in order to ensure their

18 information was up to date.  In responses to those

19 interrogatories, served on February 10, 2012, Plaintiff claims

20 that she was diagnosed with PTSD by two doctors in Seattle, WA:

21 Dr. Corey Fagan and Dr. Gwyneth McConnell. (Burkett Decl., Ex. C,

22 Def.'s Response to Interrogatory 28.)  Plaintiff thereafter, on

23 March 2, 2012, disclosed both of those doctors as expert

24 witnesses expected to testify regarding her PTSD. (Mar. 2, 2012

25 Disclosure, ECF No. 41 at 2.)

26 ///

27 ///

28 ///

1    On February 23, 2012, in the wake of this new information
2  concerning Plaintiff's PTSD diagnosis, Defendants requested that
3  Plaintiff stipulate to an independent medical examination
4  ("IME"). (Burkett Decl., Ex. D at 37.)  Plaintiff suggested they
5  agree that the mental examination report would be complete by
6  April 6, and Defendants' expert would be produced for deposition
7  up to April 27. (<u>Id.</u> at 39.)  On March 15, Plaintiff's counsel
8  responded that Plaintiff would not stipulate to an IME because
9  Defendants "were on notice of such condition [the alleged PTSD
10 diagnosis] at that time [February 2010], and your rationale that
11 you just learned of this condition is inaccurate." (Burkett
12 Decl., Ex. G, at 46.)  Defendants moved to compel the mental
13 examination, and on March 30, 2012, the assigned Magistrate Judge
14 denied the motion as untimely in light of the April 6, 2012
15 discovery deadline. (Burkett Decl. at 6.)  The Magistrate Judge
16 did not rule on the merits of the motion to compel a mental
17 examination. (March 30, 2012 Order, ECF No. 48 at 2.)

18    Plaintiff contends that Defendants seek an unfair litigating
19 advantage by asking for the medical examination too close to the
20 court ordered deadline, and that using due diligence, they should
21 have requested it earlier. (Opp. at 4-5.)  Defendants contend
22 that the facts of the case changed such that it became necessary
23 to request the examination in February, and that Plaintiff now
24 seeks to use unacceptable delaying tactics to her advantage.
25 ///
26 ///
27 ///
28 ///

1    Moreover, Plaintiff asserts that even if there is good cause
2    to change the PTSO, and compel a medical examination, Defendants'
3    examination demand should fail because Federal Rule of Civil
4    Procedure 35(a)(2)(B) requires that the motion to compel a mental
5    examination must specify "the person or persons who will perform
6    [the examination.]" (Opp. at 12.)  Defendants' motion does name
7    Dr. George Woods as the neurophsychiatrist who will conduct a
8    clinical evaluation, but says that Dr. Woods may recommend a
9    referral to Dr. Dale Watson to perform psychological testing.
10   (Id.)  Plaintiff also contends that the ten hours of mental
11   examinations sought by Defendants is excessive.  (Id. at 12-13.)
12       Finally, Defendants claim that on March 30, 2012, Plaintiff
13   served Defendants with a revised report from their expert CPA
14   Robert Stephenson.  (Motion to Dismiss ("MTD"), ECF No. 49 at 3.)
15   The revised report includes new information and substantially
16   changes Stephenson's valuation of economic damages.  (Id.)  The
17   first report only analyzed what Plaintiff would have earned in
18   "alternative employment," while the second report analyzed what
19   Plaintiff would have earned if she had obtained a masters degree
20   and began teaching at a community college. (Reply, ECF No. 55 at
21   8.)  Further, Stephenson's deposition was then taken on April 2,
22   2012, only four days before Defendants' supplemental/rebuttal
23   expert disclosures were due, on April 6, 2012.  Defendants seek
24   more time to consult with their potential rebuttal expert witness
25   regarding the new information.
26   ///
27   ///
28   ///

1

**STANDARD**

2

3      Generally, the Court is required to enter a pretrial
4  scheduling order within 120 days of the filing of the complaint.
5  Fed. R. Civ. P. 16(b).  The scheduling order "controls the
6  subsequent course of the action" unless modified by the Court.
7  Fed. R. Civ. P. 16(e).  Orders entered before the final pretrial
8  conference may be modified upon a showing of "good cause," Fed.
9  R. Civ. P. 16(b), but orders "following a final pretrial
10  conference shall be modified only to prevent manifest injustice."
11  Fed. R. Civ. P. 16(e); see also <u>Johnson v. Mammoth Recreations</u>,
12  975 F.2d 604, 608 (9th Cir. 1992).  Here, because no final
13  pretrial conference has yet been conducted, the "good cause"
14  standard applies.

15      Rule 16(b)'s "good cause" standard primarily considers the
16  diligence of the party seeking the amendment.  <u>Johnson v. Mammoth</u>
17  <u>Recreations</u>, 975 F.2d 604, 609 (9th Cir. 1992).  The district
18  court may modify the pretrial schedule "if it cannot reasonably
19  be met despite the diligence of the party seeking the extension."
20  Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment);
21  <u>Id.</u>  Moreover, carelessness is not compatible with a finding of
22  diligence and offers no reason for a grant of relief.  <u>Id.</u>
23  Although the existence or degree of prejudice to the party
24  opposing the modification might supply additional reasons to deny
25  a motion, the focus of the inquiry is upon the moving party's
26  reasons for seeking modification.  If that party was not
27  diligent, the inquiry should end.  <u>Id.</u>
28  ///

1    Federal Rule of Civil Procedure 35 provides that "The

2  court...may order a party whose mental or physical condition...

3  is in controversy to submit to a physical or mental examination

4  by a suitably licensed...examiner.  Fed. R. Civ. P. 35(a)(1).

5  The order may be made "only on motion for good cause..."  Fed. R.

6  Civ. P. 35(a)(2)(A).  The Supreme Court has ruled that to obtain

7  a court order for an IME, the party seeking the exam must show

8  that "the mental or physical condition" of the party who is to be

9  examined "is in controversy," and that there is "good cause" for

10  the examination.  See Schlagenhauf v. Holder, 379 U.S. 104, 117

11  (1964).  These requirements "are not met by mere conclusory

12  allegations of the pleadings - nor by mere relevance to the case

13  - but require an affirmative showing by the movant that each

14  condition as to which the examination is sought is really and

15  genuinely in controversy and that good cause exists for ordering

16  each particular examination."  Id. at 118.  The Schlagenhauf

17  Court concluded that Rule 35 "requires discriminating application

18  by the trial judge, who must decide as an initial matter in every

19  case, whether the party requesting a mental or physical

20  examination...has adequately demonstrated the existence of the

21  Rule's requirements of 'in controversy' and 'good cause,' which

22  requirements...are necessarily related."  Id. at 118-19.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

While the Ninth Circuit has not ruled directly on this point, many courts have followed the rule that:

> Courts will order plaintiffs to undergo mental examinations where the cases involve, in addition to a claim of emotional distress, one or more of the following: 1) a cause of action for intentional or negligent infliction of emotional distress; 2) an allegation of a specific mental or psychiatric injury or disorder; 3) a claim of unusually severe emotional distress; 4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or 5) plaintiff's concession that his or her mental condition is "in controversy" within the meaning of Rule 35(a). <u>Turner v. Imperial Stores</u>, 161 F.R.D. 89, 95 (S.D. Cal. 1995).

**ANALYSIS**

**A.   The Defendant's Motion to Compel Mental Examination Is Proper Under Federal Rule of Civil Procedure 35.**

**1.   Plaintiff's Mental Condition Is "In Controversy," And Defendants Have Demonstrated "Good Cause" To Order An Independent Medical Examination.**

Plaintiff claims to be suffering from PTSD, a "specific mental or psychiatric injury or disorder," and plans to call expert witnesses to testify to that effect.  In addition, Plaintiff does not contest the fact that her mental condition is now "in controversy" within the meaning of Rule 35(a).

Defendants have good cause to ask the Court to order an IME because Plaintiff seeks damages based on her claim that she has been diagnosed with PTSD.  She plans to call expert witnesses to testify to that effect.  Once again, Plaintiff does not contest the fact that Defendants have good cause to compel an IME. Therefore, the Court finds that Defendants have satisfied the requirements of Rule 35 for obtaining a mental examination.

Because the deadline for conducting discovery in the form of that examination has passed, the Court must now consider whether Defendants have demonstrated the requisite "good cause" to obtain an IME at a later date.

**B.  Good Cause Exists To Modify The Pretrial Scheduling Order Pursuant to Federal Rule of Procedure 16(b)(4).**

Defendants contend that they asked for Plaintiff's stipulation to an IME in a timely manner, and that Plaintiff simply ignored this request.  As discussed above, Defendants learned on February 10 of Plaintiff's PTSD diagnosis, and requested an IME on February 23.  Defendants suggested a schedule that would substantially conform to the scheduling order already in effect.  Plaintiff chose not to respond to this request until March 15, at which time Plaintiff simply said that Defendants should have requested the IME at an earlier date.  Defendants argue that Plaintiff should not be allowed to "benefit from her own delay by asserting a lack of time under the current discovery cut-off." (MTD, ECF No. 49-1 at 2.)  Defendants add that before learning of Plaintiff's PTSD diagnosis in February 2012, they had no reason to request an IME.  (Id. at 3.)

Plaintiff argues that in exercising proper diligence, Defendants should have requested an IME earlier, and therefore should not be entitled to a modification of the PTSO.  Plaintiff contends that even before her latest PTSD diagnosis, Defendants had known of a PTSD diagnosis nearly two years earlier, and "chose to sit on the information," demonstrating a lack of diligence.  (Opp. at 4.)

1   Plaintiff mistakenly implies that meeting some of the Turner
2   requirements at an earlier point in the discovery process
3   necessarily demonstrates that Defendants were dilatory in not
4   requesting an IME earlier.  Specifically, Plaintiff points out
5   that she had a claim for IIED, had described severe emotional
6   distress in her Complaint, and had at least some documentation
7   regarding a PTSD diagnosis made in late 2008 or early 2009.  This
8   is more than enough to meet the requirements laid out in Turner,
9   as enumerated above.  Defendants, however, point out that
10  Plaintiff did not have a clear and unambiguous PTSD diagnosis,
11  claimed no specific mental condition, was receiving no treatment
12  at the time of her deposition in February 2010, and had received
13  no treatment for about a year beforehand.  Based on this
14  information, the defense submits it would have been neither
15  necessary nor prudent to seek a mental examination in 2010.
16  Although PTSD had been mentioned in some of the discovery
17  documents, given the lack of any ongoing treatment, it was not
18  clearly in controversy, and thus there was not "good cause" to
19  ask for a mental evaluation to determine the existence of that
20  particular mental disorder or condition.  See Turner, 161 F.R.D.
21  at 92.  As Defendants point out, requesting an IME in a condition
22  that by all indications had abated could in fact have given new
23  life to a claim that appeared not to be at issue.  There is no
24  reason that Defendants' decision not to seek an IME in 2010
25  should preclude them from doing so when new facts came to light.
26  ///
27  ///
28  ///

10

1    Further, Defendants did not make their IME request so late
2    that it would give them an "unfair advantage" as Plaintiff claims
3    in her Opposition.  The request was sent to Plaintiff on
4    February 23, 2012; shortly after disclosure of the new PTSD
5    diagnosis, and well before the April 6, 2012 deadline laid out in
6    the PTSO.  Because Defendants were diligent in requesting an IME
7    before the PTSO deadline, it is appropriate for the Court to
8    modify the PTSO pursuant to Rule 16(b)(4).
9    As to Plaintiff's concerns regarding the psychologist who
10   will be performing the testing, and the duration of the proposed
11   examinations, the Court finds that Defendants' requests are
12   reasonable and satisfy the requirements of Rule 35.  Defendants
13   list Dr. George Woods as the neurophsychiatrist who will be
14   conducting a clinical evaluation.  He typically refers patients
15   to a psychologist for a psychological examination to aid in his
16   evaluation.  Defendants have listed a proposed psychologist,
17   Dr. Dale Watson, and outlined the testing that the psychologist
18   typically carries out.  Dr. Woods will be submitting the final
19   report, and will be made available for deposition.  The
20   Defendants have sufficiently identified the professionals who
21   will carry out the IME, and there is no need for additional
22   specificity regarding the psychologist because he will not be
23   called as an expert witness.  Regarding the duration of the
24   proposed medical examination, Plaintiff fails to provide an
25   adequate reason to limit the examination to two (2) hours.
26   ///
27   ///
28   ///

11

1    Regarding Defendants' request for more time to consult with
2  expert witnesses regarding the new information in Plaintiff's
3  revised CPA report, the Court finds that request reasonable.  The
4  revised amount for damages is based on a new analysis which could
5  reasonably require expert testimony to adequately address.
6  Defendants request more time in order to locate an expert to
7  address this more specific claim.  Since Defendants received the
8  revised CPA report at such a late date, and since they have
9  exercised reasonable diligence in addressing Plaintiff's damage
10  claims, the Court finds that there is good cause to modify the
11  scheduling order.

12

13                           **CONCLUSION**

14

15    The Court finds that there is good cause to modify the PTSO,
16  and that the Motion to Compel Mental Examination is justified, so
17  Defendants' Motions seeking said relief (ECF No. 49) are GRANTED.
18  Plaintiff shall make herself available for mental examination
19  within thirty (30) days of the date this Order is electronically
20  filed.  Defendants shall disclose results of the mental
21  examination report within three (3) weeks after the examination
22  is completed.  Dr. Woods shall be produced for deposition up to
23  three (3) weeks after the report is disclosed. Defendants shall
24  also be given the opportunity to retain an expert witness to
25  address Plaintiff's new claims regarding her career prospects.
26  ///
27  ///
28  ///

1  Should Plaintiff choose to retain an expert, that expert's
2  identity must be disclosed within thirty (30) days of the date
3  this Order is electronically filed.  Trial in this matter remains
4  set for December 3, 2012.
5       IT IS SO ORDERED.
6
   Dated: August 21, 2012
7
8                                    _____
9                                    MORRISON C. ENGLAND, JR.
                                     UNITED STATES DISTRICT JUDGE
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                                    13